Michael L. Rodenbaugh (SBN 179059)
Anafrancesca Comunale (SBN 323257)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email:  mike@rodenbaugh.com
          acomunale@rodenbaugh.com
          docket@rodenbaugh.com

Attorneys for Plaintiff
MAGIC KITCHEN, INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAGIC KITCHEN, INC., a Kansas corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>The Domain Name <magic-kitchen-order.online> and other Defendant Domains listed at Exhibit C, and DOES 1-100,<br><br>　　　　　Defendants. | CASE: 23-cv-4084<br><br>COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR VIOLATION OF:<br>1. THE RACKETEER INFLUENCED CORRUPT ORGANIZATION ACT;<br>2. TRADEMARK INFRINGEMENT PURSUANT TO THE LANHAM ACT;<br>3. THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT;<br>4. COMMON LAW FRAUD,<br>5. COMMON LAW CONVERSION,<br>6. COMMON LAW UNJUST ENRICHMENT |

**I.     INTRODUCTION**

1.     Defendants, through their website recently operated at the "magic-kitchen-order.online" domain name, and via use of the WhatsApp messaging service, are engaged in fraudulently inducing people to share financial information, give money, and post fake reviews.

2.     Defendants' phishing and fraud scheme unlawfully uses the Plaintiff's federally registered trademark in connection with fake websites and cybersquatted domain names.  Doe

Defendants have used typographical errors in the various cybersquatted Defendant Domains to falsely lead consumers to rely on the Plaintiff's goodwill and reputation, to then give money to the Defendants. Defendants have also used fraudulent websites featuring Plaintiff's well-known logo mark, as well as Plaintiff's trade name and trademark, in order to confuse people into believing that the Defendants' scheme is associated with and/or sponsored by Plaintiff.

3. Defendants have caused and continue to cause Plaintiff's goodwill and reputation to be damaged, as it has been barraged with inquiries from victims or would-be victims of the Defendants' scam, and has been falsely and repeatedly accused of fault for the harm suffered by people who have fallen victim to the scam. Some of those people have falsely been led to believe that they were employed by Plaintiff to produce the fake reviews.

4. The Defendants' unauthorized and unlawful use of Plaintiff's registered trademark bolsters their fraudulent misrepresentations to unsuspecting people, constitutes a conspiracy to commit wire fraud and to infringe upon Plaintiff's trademark rights, and constitutes various other statutory and common law torts as set forth herein.

5. Plaintiff brings suit to: (a) protect people from further financial damages related to the Defendants' illegal activities; (b) stop the ongoing and substantial harm to Plaintiff's reputation, and drain on resources from efforts to thwart the scam; and (c) seek redress for the significant financial and other damages caused to Plaintiff by Defendants' unlawful scheme.

6. Plaintiff asserts claims against Defendants for violations of Racketeer Influenced Corrupt Organization Act, 18 U.S.C § 1961 *et seq*. ("RICO"), Lanham Act, 15 U.S.C. § 1051 *et seq*., Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125 ("ACPA"), and for common law fraud, conversion, and unjust enrichment.

**II.    PARTIES & TRADEMARK**

7. Plaintiff Magic Kitchen, Inc. is a Kansas corporation with its principal place of business in Lenexa, Kansas. Magic Kitchen, Inc. owns a valid federal trademark registration for the mark "MAGICKITCHEN.COM". Plaintiff's website at <magickitchen.com> prominently features that registered trademark as well as Plaintiff's well-known Magic Kitchen trademark and trade name, and Plaintiff's distinctive logomark:



(collectively, the "Trademarks").  Plaintiff's products and services offered under the Trademarks include the preparation and packaging of ready-to-cook frozen food products which are ordered by and sent to customers.

8. Defendants are individuals and/or corporate entities who act in concert to own, operate, and/or otherwise control fraudulent websites, deceitful WhatsApp accounts, and the cybersquatted Defendant Domains that lure people into Defendants' fraud scheme with the promise to pay them for publishing fake reviews about Plaintiff's goods and services.

9. The true identities of Does 1-100 are presently unknown to Plaintiff. On information and belief, Does 1-100 elicited, advertised, aided, caused, directed, supervised, contributed to, conspired to commit, or otherwise furthered the unlawful conduct alleged herein.

10. On information and belief, each and all of the Defendants conspired with one another, personally participated in, and/or had the right and ability to supervise, direct, and control the unlawful conduct alleged herein, and derived a direct financial benefit from that unlawful conduct. Each and all of the Defendants are therefore subject to liability for the unlawful conduct alleged herein.

### III. JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over Magic Kitchen, Inc.'s claims for violation of RICO, the Lanham Act, and the ACPA ("The Federal Claims") under 18 U.S.C. § 1964, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).

12. The Court also has subject matter jurisdiction under 28 U.S.C. §§ 1332 because, on information and belief, this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

13. The Court has supplemental jurisdiction over the common law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the Federal Claims that they form part of the same case or controversy.

14. The Court has personal jurisdiction over the Doe Defendants because they purposefully directed their unlawful and fraudulent activities via domain names and servers based

in California.  Specifically, the <magic-kitchen-order.online> domain name that was recently used in operation of the fraud, and additional Defendant Domains, are registered at Dynadot, Inc. located in this District.  Moreover, the Defendants use the WhatsApp messaging service, operated by Meta, Inc. which is headquartered in this District, to communicate with Defendants' victims. Additionally, the Court has *in rem* jurisdiction over the Defendant Domains under the ACPA, 15 U.S.C. § 1125(d), because Defendants have used Defendant Domains, registered in this District, to fraudulently mislead consumers and profit from Plaintiff's registered Trademark.

15. This court is the proper venue pursuant to 28 U.S.C. § 1400(a) because several of the Defendant Domains are subject to *in rem* jurisdiction in the Northern District of California. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial parts of the events giving rise to Plaintiff's claims in this suit occurred in the Northern District of California, as alleged in the previous Paragraph.

## IV.   FACTS

16. Magic Kitchen, Inc. first used the registered Trademark in commerce at least as early as May 1, 2006. Since then, Plaintiff has continued to provide delicious, nutritious, convenient, and special diet sensitive meal options for individuals and families to eat well at home. Customers of Magic Kitchen receive top quality, nutritional meal options at fair prices and exceptional levels of customer service.

17. The MAGICKITCHEN.COM trademark was registered on the Principal Register on October 23, 2012 – U.S. Trademark Registration No. 4230087.[1] Plaintiff has preserved the trademark registration through renewal, maintenance, use and protection of the mark since then.

18. In addition to the goods and services that Plaintiff provides to its customers, it also provides occasional discounts and coupons to new customers and elderly customers on its website. These coupons and discounts are advertised directly on Plaintiff's website and domain, as well as through documents that accompany the delivery of the prepackaged foods delivered to customers.

19. In June of 2023, Plaintiff took notice of numerous negative reviews of their services from people that were never customers of their goods and services, and were accusing Plaintiff of operating a scam. The scam mentioned in these reviews accused Plaintiff of luring customers in to the scam by promise of paying money if they were to write fake reviews via the Defendants' fraudulent website. The scam required that the unsuspecting customer give money to

---

[1] See USPTO Registration Certificate, a true and correct copy is attached as "Exhibit A".

the third party, write the review, then the customer was promised they would be paid back more money as compensation for writing the review.

20. Magic Kitchen, Inc. promptly undertook an investigation and began to attempt to manage the numerous negative reviews submitted through its website and the TrustPilot review website, many of which accused the Plaintiff of operating the phishing scam. Plaintiff has since been advised of numerous websites which used typographical errors in the domain names in order to lead customers to the phishing scam. The Defendants used Magic Kitchen, Inc.'s registered trademark and proceeded to add additional words or characters to the URL to misrepresent the validity of their domain and services therein.[2]

21. Upon discovery of these various phishing websites and domains, Magic Kitchen, Inc. promptly reported each of the domains to the domain Registrars, including Dynadot, to report the unlawful use of Plaintiff's trademark and the illegal phishing activities operating through these domains. Immediately or soon after being reported, various Defendant Domains each were disabled – more than a dozen times. However, the Defendants persisted to continue to register new domains immediately or soon after the previous domains were disabled.

22. The following are the known, reported, and disabled domains to date:

| Domain Name | Domain Registrar | Date Reported to Registrar | Date Disabled |
|---|---|---|---|
| Magickitchen-ultra.com | Gname | June 6, 2023 | June 6, 2023 |
| Magickitchen-beta.com | Gname | June 8, 2023 | June 9, 2023 |
| Magickitchen-alpha.com | Gname | June 14, 2023 | June 14, 2023 |
| Magickitchen-agent.com | Gname | June 17, 2023 | June 17, 2023 |
| Magickitchen-agent.com | Gname | June 19, 2023 | June 19, 2023 |
| Magickitchen-agent.work | Gname | June 19, 2023 | June 19, 2023 |
| Magickitchen-agent.online | Dynadot | June 23, 2023 | June 26, 2023 |
| Agent-magickitchen.com | Gname | June 27, 2023 | July 9, 2023 |
| Magickitchen-uk.com | Gname | July 6, 2023 | July 6, 2023 |

---

[2] See exemplar phishing websites, a true and correct copy is attached as "Exhibit B".

| | | | |
|---|---|---|---|
| Magickitchen-orders.com | Gname | July 7, 2023 | July 8, 2023 |
| Uk-magickitchen.com | Gname | July 10, 2023 | July 10, 2023 |
| Magickitchen.online | Dynadot | July 11, 2023 | July 12, 2023 |
| Magic-kitchen-order.today | Gname | July 12, 2023 | July 12, 2023 |
| Magic-kitchen-order.online | Dynadot | July 14, 2023 | August 9, 2023 |
| Magic-kitchen-agent.work | Gname | August 9, 2023 | August 9, 2023 |

Plaintiff has engaged in significant efforts to protect consumers from further phishing schemes by continuously monitoring and reporting pages that use typographical errors to lure unsuspecting consumers into the aforementioned phishing scheme. Per the above table, those efforts have been successful insofar as many infringing domains have been suspended by the registrar of record. But, the Doe Defendants still continue to register new infringing domains, and continue their fraud scam.

23. Plaintiff also has taken measures to aid victims who have already fallen victim to the illegal activities by referring them to law enforcement authorities.

24. While attempting to prevent and manage the ongoing damage to its reputation and drain on its executive resources, Magic Kitchen, Inc. has expended substantial effort and valuable time. The full extent of such efforts is to be proved at trial.

**FIRST CAUSE OF ACTION**
**Violation of Racketeer Influenced Corrupt Organization Act**
**(18 U.S.C § 1961 *et seq.*)**

25. Plaintiff re-alleges each paragraph above as if fully set forth here.

26. Each individual Doe Defendant constitutes a "person" within the meaning of 18 U.S.C. § 1961(3), as each is capable of holding a legal or beneficial interest in property.

27. The Doe Defendants collectively constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), as the individuals, entity, partnership, and the group of Does are associated in fact although not as a legal entity.

28. The Doe Defendants' enterprise engages in and affects interstate commerce, including through the fraudulently purporting to be Magic Kitchen, Inc. to elicit personal

information from consumers, as set forth above. These communications and transactions occur through the use of interstate telecommunication wires.

29. The Doe Defendants are each separate entities, distinct from the enterprise itself, and unlawfully use the enterprise as a mechanism through which unlawful activity is being committed.

30. The common and shared purpose of the enterprise is to illegally obtain consumer personal information, such as passwords and credit cards, and to obtain payments from victims, by promising to pay more compensation if the consumer publishes fake product reviews.

31. The enterprise has an ongoing organization with a framework for making decisions, functions as a continuing unit, and has a structure and system of authority guiding its operations, separate and apart from the pattern of racketeering in which the enterprise is engaged.

32. The Doe Defendants each participate in the operation and management of the enterprise and perpetuate particular racketeering acts in furtherance thereof.

33. The predicate acts which constitute the period of racketeering activity pursuant to 18 U.S.C. § 1961(5) are acts of wire fraud in violation of 18 U.S.C. § 1343. Each act involves the Doe Defendants and/or enterprise knowingly and intentionally causing wire communications to be sent with the purpose to illegally obtain and/or exercise control over victims' personal and financial information under the fraudulent representation that Doe Defendants were operating at the direction of Plaintiff.

34. The period of racketeering activity began no later than June 6, 2023, and remains ongoing and persistent despite numerous granted requests to disable the fraudulent domains used to host fake websites and to obtain and control victims' personal and financial information.

35. The Doe Defendants facilitate, engage in, and direct the pattern of racketeering with knowledge of the fraudulent and illegal nature of the enterprise's acts, and they operate the enterprise with the specific intent to defraud and misrepresent Plaintiff and the general public for the Doe Defendants' own financial benefit.

36. The pattern of racketeering affects interstate commerce, as it causes harm to Magic Kitchen, Inc., its customers, and the general public, and impacts the legitimate business reputation, reviews, and sales of Plaintiff's packaged food products.

37. The Doe Defendants receive financial benefits from their operation of the enterprise, including, but not limited to, the control of numerous victims' personal and financial information, and via payments from the victims to the Doe Defendants.

38. The Doe Defendants have adopted the goal of the enterprise by agreeing to and actively facilitating the creation of new domains immediately or soon after their fraudulent domains are established, the solicitation to customers' to participate in their fraudulent scheme, the obtaining of victims' personal and financial information, the obtaining of payments from the victims, and the publishing of fake product reviews.

39. As a direct and proximate result of the Defendants' and the enterprise's violations of 18 U.S.C. § 1961, Plaintiff has been injured in its business and property in an amount to be proven after further discovery. Plaintiff further is entitled to redress of these damages, and the costs of this suit, including attorneys' fees, under 18 U.S.C. § 1964.

**SECOND CAUSE OF ACTION**
**Trademark Infringement**
**(15 U.S.C § 1051)**

40. Plaintiff re-alleges each paragraph above as if fully set forth here.

41. The Defendants' activities constitute infringement of Magic Kitchen, Inc.'s federally registered trademark, U.S. Registration Number 4230087, and of Plaintiff's other Trademarks.

42. Magic Kitchen, Inc. advertises, markets, sells, and distributes products under the trademark described above and uses the trademark to distinguish Plaintiff's products from other food preparation, packaging, and production companies in the same or related fields.

43. Consumers, customers, and members of the public have understood and come to appreciate the meaning of the trademark to signify Plaintiff's products as a result of Plaintiff's long, continuous, and exclusive use of the Trademarks.

44. The Defendants' use and reproduction of the mark within fraudulent domains, on fake websites, and in fraudulent WhatsApp account names, was done without any authorization from Magic Kitchen, Inc. The activities by the Defendants have resulted in confusion, mistakes, and deception as to the source, origin, and authenticity of Plaintiff's products and services.

45. The Defendants' activities have already and will continue to lead members of the consuming public to conclude, incorrectly, that Defendants' fraudulent phishing practices are authorized and/or controlled by Magic Kitchen, Inc., thereby harming Magic Kitchen, Inc., its business and reputation, and customers.

46. As a result of Defendants' intentional disregard of Plaintiff's Trademarks, Magic Kitchen, Inc. is entitled to recover damages, Defendants' profits attributed to the infringement, and

costs of the action including attorneys' fees pursuant to 15 U.S.C. §1117(a) and (b). Moreover, Magic Kitchen, Inc. is entitled to statutory damages under 15 U.S.C. §1117(c).

47. Magic Kitchen, Inc. is further entitled to injunctive relief. Plaintiff has no adequate remedy at law for the Defendants' infringing conduct because, among other things: (a) Magic Kitchen, Inc.'s trademarks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Magic Kitchen, Inc.'s reputation and goodwill such that Magic Kitchen, Inc. could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, and/or deceived as to the source, origin, or authenticity of the materials being advertised; and (d) Defendants' wrongful conduct, and the resulting harm to Magic Kitchen, Inc., is continuing.

## THIRD CAUSE OF ACTION
### Anti-Cybersquatting Consumer Protection Act of 1999
### (15 U.S.C § 1125)

48. Plaintiff re-alleges each paragraph above as if fully set forth here.

49. The Doe Defendants' registration, maintenance, operation, trafficking in, and use of Defendant Domains and other domain names that are confusingly similar to Magic Kitchen, Inc.'s registered Trademark constitutes violation of the Anti-Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d)(1) ("ACPA").

50. The Defendants constructed the Defendant Domains using typographical errors or other similar variations of the Plaintiff's Trademarks to confuse and mislead customers to rely upon the services and provide private financial information and payment in exchange for the Defendants' fraudulent promises.

51. Upon information and belief, the Defendants registered the Defendant Domains for the purpose of luring internet visitors attempting to reach Plaintiff's website.

52. The Doe Defendants' knowingly and intentionally conceal the identities of the true owners of the Defendant Domains and/or the registrants' locations, by using 'privacy/proxy services' to mask the Defendant Domains' WHOIS information.

53. Upon information and belief, the concealed WHOIS information for the Defendant Domains does not reflect the legal name of the registrants of the domains, in further attempt to conceal the nature of the phishing scheme and escape liability for any damages incurred therein.

54. Magic Kitchen, Inc. has never provided authorization to the Defendants

individually or in their enterprise to use the Trademarks on the Defendants' websites, within the Defendant Domains, within the fraudulent WhatsApp account names, or in any other capacity at issue.

55. As a result of the actions alleged above, Magic Kitchen, Inc. has suffered extensive and irreparable harm to its goodwill and reputation, as well as damages in an amount and to an extent to be proven at trial. Additionally, the public and victims of the phishing scheme have suffered damages and losses as a result of the phishing domains compromise of the victims' personal and financial information, and extraction of monetary payments from the victims.

56. Plaintiff is entitled to an award of statutory damages under the ACPA, of $100,000 per infringing Defendant Domain.

57. Plaintiff anticipates amending the Complaint to add more Defendant Domains, as Defendants' fraud is ongoing.

## FOURTH CAUSE OF ACTION
### Fraud

58. Plaintiff re-alleges each paragraph above as if fully set forth here.

59. Each attempt and act of soliciting customers to "sign-up" on the fraudulent websites, and/or to pay money, is an instrument to obtain money from unsuspecting consumers by pretending or misrepresenting to be the Plaintiff, and constitutes an act of fraud by the Defendants.

60. Each use of the Plaintiff's Trademarks within the Defendant Domains, fake websites, and fraudulent WhatsApp accounts, to send wire communications to victims of the phishing scheme, constitutes an act of fraud.

61. In each use of the Defendant Domains, Doe Defendants falsely represented the material facts that they are an authorized user of Plaintiff's Trademaks, that they would pay compensation to victims for leaving fake reviews, and that Magic Kitchen, Inc. is involved in the phishing activity. These fraudulent misrepresentations led victims to publish fake product reviews, and caused victims to leave negative reviews of Magic Kitchen products on third party review sites such as TrustPilot.

62. The Defendants' fraud directly and proximately caused Magic Kitchen, Inc.'s injuries to an extent and amount to be proven at trial. Magic Kitchen, Inc. is entitled to recover these damages, and is further entitled to injunctive relief for the reasons set forth above.

## FIFTH CAUSE OF ACTION

**Conversion**

63. Plaintiff re-alleges each paragraph above as if fully set forth here.

64. Each act of collecting and obtaining customer information including but not limited to credit card information, and each instance of obtaining money from victims based on false pretenses, constitutes an act of conversion.

65. Each unauthorized use of the Plaintiff's Trademarks constitutes an act of conversion.

66. Defendants are intentionally interfering with Magic Kitchen, Inc.'s property and with victims' information and money, without lawful justification or authorization, and are depriving Magic Kitchen, Inc. of sole possession and control of its valuable intellectual property.

67. The Defendants' acts of conversion directly and proximately caused Magic Kitchen, Inc.'s continuing injuries to an extent and amount to be proven at trial. Magic Kitchen, Inc. is entitled to recover these damages, and is further entitled to injunctive relief for the reasons set forth above.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**

68. Plaintiff re-alleges each paragraph above as if fully set forth here.

69. The Defendants have been unjustly enriched by the acts set forth above.

70. The Defendants have received a benefit from the financial information of victims and from payments from victims. under the guise of Plaintiff's authorization and/or direction, and used the goodwill and reputation of Plaintiff and Plaintiff's Trademarks to convince those victims to provide personal and financial information and to pay money into the phishing scheme.

71. Magic Kitchen, Inc. is entitled to recover the benefits that Defendants were unjustly enriched by, in an amount to be proven at trial, and is further entitled to injunctive relief for the reasons set forth above.

**V.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff alleges that it has been damaged by Defendants' conduct as set forth herein, and prays for judgment as follows:

72. A Temporary Restraining Order and Permanent Injunction requiring Defendants to immediately cease and desist from any use of Plaintiff's Trademarks, and requiring third party domain name registrars and registries, and web hosting companies, to disable the Defendant

Domains and/or websites, and any future domains and/or websites that are registered as part of Defendants' scheme;

73. Transfer of the Defendant Domains to Plaintiff, pursuant to the ACPA;

74. Statutory damages under the ACPA, of $100,000 per Defendant Domain;

75. A finding awarding Plaintiff monetary compensation for damages sustained by Defendants' wrongful actions as alleged in this Complaint.

76. An award of reasonable attorneys' fees and expenses, and costs of this action; and,

77. Such other and further relief as the Court may deem just and proper.

### VI.    DEMAND FOR JURY TRIAL

78. Plaintiffs respectfully request that all issues in this case be decided by a jury.

Dated: August 11, 2023                              Respectfully submitted,

By: _____/s/ Mike Rodenbaugh_____

Mike L. Rodenbaugh (SBN 179059)
RODENBAUGH LAW

*Attorneys for Plaintiff,*
*MAGIC KITCHEN, INC.*